# ANTONIO LANASA *v.* B. HOWELL GRISWOLD, JR., ET AL.

*Banks and Banking—Check in Favor of Steamship—Payment By Bank.*

Where plaintiff drew a check on his account with defendant bankers in favor of "SS. Belvernon and owners," for charter hire of that steamship, that being his usual method of designating payees in checks for charter hire of steamships, he could not assert a liability as against defendants because they cashed the check, when endorsed in behalf of the G. F. Company, which plaintiff at the time supposed to be the owner of the steamship, from which he chartered it, and which he intended to describe by the words "SS. Belvernon and owners," although that company had merely a contract for the purchase of the steamship, on which it subsequently defaulted, so that it could not perform the terms of the charter. pp. 28-32

In the case of a check drawn in favor of "SS. Belvernon and owners," for the charter hire of such vessel, *held* that the evidence showed that by the quoted words the drawer intended to designate a certain company from which he chartered the vessel, and which he supposed to be the owner. p. 31

*Decided June 10th, 1926.*

Appeal from the Superior Court of Baltimore City (ULMAN, J.).

Action by Antonio Lanasa against B. Howell Griswold, Jr., and others, co-partners trading as Alexander Brown & Sons. From a judgment for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*James Morfit Mullen,* for the appellant.

*W. Ainsworth Parker,* with whom were *Brown, Brune, Parker & Carey* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The exceptions taken at the trial of this case relate to the underlying question of liability of the defendant bankers to the plaintiff for charging to his account a check which they paid under an endorsement alleged to have been unauthorized. The check was for six thousand dollars and was drawn by the plaintiff, a fruit importer, upon his account with the defendants, Alexander Brown & Sons, in favor of "SS. Belvernon and owners," for one month's charter hire of the steamship Belvernon for the transportation of bananas from the island of Jamaica to the City of Baltimore. The charter was procured through a New York ship broker operating as I. C. Felleman & Co., and the charter party was executed by the Gulf Fruit Company, Incorporated, as owner. In performance of his agreement to pay the charter hire in advance, the plaintiff sent the check in question to the broker in New York, who endorsed it: "SS. Belvernon and owners, I. C. Felleman & Co., Agents," and deposited it to the endorser's credit in the Bank of America in that city. It was transmitted, with the endorsement of the Bank of America, to the Baltimore branch of the Federal Reserve Bank, and was paid by Alexander Brown & Sons through the Baltimore Clearing House. At the time of the execution of the charter party, the Gulf Fruit Company had contracted in writing for the purchase of the Belvernon from Harry Morse, who was having the vessel repaired at Noank, Connecticut. But no part of the purchase price was paid, and the Gulf Fruit Company never obtained a delivery of the vessel. It was therefore unable to perform the terms of its charter party with the plaintiff on account of which the check referred to was drawn. There is proof in the record that the proceeds of the check, less the usual commissions and expenses, were remitted to the Gulf Fruit Company by the broker who endorsed the

check in the company's name as its agent. There is also testimony that the company, through its vice-president, authorized the broker to endorse the check. The contention of the plaintiff, however, is that as the check was drawn to the order of "SS. Belvernon and owners," a valid endorsement of the check could be made or authorized only by the actual owner of the steamer, and that as the Gulf Fruit Company never acquired the title to the Belvernon, the endorsement on its behalf could not protect the defendants from liability to the plaintiff for paying the check and charging it to his account. The trial judge, before whom the case was tried without a jury, declined to adopt that theory in his rulings, and rendered a verdict and judgment for the defendants.

. There are ten bills of exception in the record. Nine of them refer to rulings on the admissibility of evidence and one to the action of the court in refusing the first of two prayers offered by the plaintiff, and in granting two of the ten prayers which the defendants presented. The rulings on the prayers will be first considered.

The first prayer of the plaintiff sought a directed verdict in his favor if the court, sitting as a jury, should find that the plaintiff drew the check in evidence upon the defendant bankers to the order of the "SS. Belvernon and owners," and that the vessel was real and existing, and its owners were real and not fictitious persons, and that the check was endorsed and presented for payment by I. C. Felleman & Co., agents, and was paid or caused to be paid by the defendants to Felleman & Co., and that the face amount of the check was charged to the plaintiff's account with the defendants, and that Felleman & Co. had no authority to endorse it for the owners of the steamship.

The defendants' theory, as stated in their third prayer, was that if the Gulf Fruit Company executed a written charter of the steamship Belvernon to the plaintiff, and that the company was named in the charter as the owner of the vessel, and that the charter provided for the payment in advance of one month's charter hire of six thousand dollars and that

Felleman & Co. forwarded the charter to the plaintiff by authority of the Gulf Fruit Company, with the request that the plaintiff execute it on his part and return it to Felleman & Co. and send therewith his check for six thousand dollars, and that both Felleman & Co. and the plaintiff believed that the Gulf Fruit Company was owner of the Belvernon, and that the plaintiff executed the charter and returned it to Felleman & Co., together with his check for six thousand dollars drawn on the defendants and payable to the order of "SS. Belvernon and owners," and that the plaintiff used such words as a designation or description of the Gulf Fruit Company, and that Felleman & Co., by authority of that company, endorsed the check "SS. Belvernon and owners, I. C. Felleman & Co., Agents," and delivered the check to the Bank of America at New York, which credited Felleman & Co. with the amount thereof, and endorsed the check and presented it to the defendants through the Baltimore Clearing House, and that the defendants paid the check and charged the amount thereof against the plaintiff's account, and that Felleman & Co. paid the proceeds of the check to the Gulf Fruit Company, less the commissions stipulated in the charter party and certain expenses, then the verdict should be for the defendants, even though the Gulf Fruit Company should be found not to be in fact the owner of the vessel, and that the owner did not authorize Felleman & Co. to do any act with respect to the chartering of the vessel or to receive or endorse the check or to collect or remit the proceeds thereof, and that the boat was never delivered to the plaintiff, and that no part of the proceeds of the check was ever received by the owner.

The tenth prayer of the defendants was to the effect that if the owners of the Belvernon and the Gulf Fruit Company executed the contract offered in evidence for the purchase of the vessel by that company, and that thereafter the plaintiff drew the check in question payable to the "SS. Belvernon and owners," and that the plaintiff used those words as a description of the Gulf Fruit Company, then the endorse-

ment of the check by authority of the Gulf Fruit Company was not invalid or unauthorized, even though the court should find that the Gulf Fruit Company did not have title to the steamer.

The plaintiff filed special exceptions to the defendants' third prayer because of alleged legal insufficiency of the evidence to show that either Felleman & Co. or the plaintiff believed that the Gulf Fruit Company was the owner of the Belvernon, or that Felleman & Co. had paid the proceeds of the check to the Gulf Fruit Company, or that the plaintiff used the words "SS. Belvernon and owners," as a designation of that company. Special exceptions also to the tenth prayer were filed for the third of the reasons just stated, and because of an alleged want of evidence to show that the endorsement on the check was made by the Gulf Fruit Company's authority.

The execution and acceptance by the plaintiff of the charter party from the Gulf Fruit Company, in which it was described as owner of the Belvernon, sufficiently proves the plaintiff's belief in the company's ownership of the vessel, and the evidence tends to prove that the same belief was held by Felleman & Co. Reference has already been made to testimony that the amount of the check, less commissions and expenses, was paid by Felleman & Co. to the Gulf Fruit Company and that the endorsement of the check by Felleman & Co. as agents of the Gulf Fruit Company was authorized by its vice-president, who had signed the charter party. It may be readily inferred from the evidence in the record that the Gulf Fruit Company was intended to be the payee of the check under the designation "SS. Belvernon and owners." On the back of the check as issued, was the memorandum, "For Charter Hire, one month in advance beginning March 24, 1924. Amount, $6,000.00." It was to the Gulf Fruit Company alone that this charter hire was payable. The evidence in the case indicates no doubt on the part of the plaintiff as to the actual ownership of the vessel by the company with which he was contracting. His use of the name of the

steamer and "owners" in designating the payee of the check for the charter hire was in accordance with the practice he previously and subsequently adopted for similar transactions. In payment of charter hire of the steamship Fort Gaines, chartered through I. C. Felleman as ship brokers, the plaintiff drew a number of checks to the order of "SS. Fort Gaines and owners," and forwarded them to the brokers, who endorsed them as agents of the designated payee. There does not appear to have been any doubt as to the ownership of the Fort Gaines, and some of the checks in payment of the charter hire were endorsed by the owner without the intervention of the brokers, but nevertheless the payees were named as SS. Fort Gaines and owners in all of the numerous checks drawn by the plaintiff for the use of that ship.

In the course of his efforts to procure delivery of the Belvernon under his charter agreement, the plaintiff learned, within three weeks after the check for its hire was issued, that the Gulf Fruit Company had not yet acquired the title to the vessel, but no question was raised as to the validity of the endorsement on the check for more than three months after he was apprised of the fact that it had been paid and charged to his account in bank. The circumstances of the case indicate quite plainly that the description of the payee in the check drawn by the plaintiff for the charter hire of the Belvernon was designed to apply to the Gulf Fruit Company, with which the plaintiff had contracted for such a payment. The special exceptions to the defendants' granted prayers were therefore properly overruled.

There was no error in the refusal of the plaintiff's first prayer or in the granting of the third and tenth prayers of the defendants, unless the fact that the Gulf Fruit Company did not obtain title to the Belvernon, by compliance with its contract of purchase, should be held, regardless of the other proved conditions, to be a sufficient reason for charging the defendants with liability for the loss which the plaintiff has thereby sustained. As the proceeds of the check were received by the Gulf Fruit Company under an authorized en-

dorsement by its agents, and as that company was described as owner of the chartered vessel in the contract, executed by the plaintiff, in performance of which the check was issued, the defendant bankers would be subjected to a very strict and burdensome liability if they were held amenable to this suit merely because they did not investigate the chartering company's title to the vessel to which the check referred. If they had sought information from the plaintiff, as the drawer of the check, they would have learned that it was given for the hire of a vessel chartered by the Gulf Fruit Company as described owner, and upon inquiry of that company they would have ascertained that it had authorized the endorsement now in dispute. They would thus have discovered facts which justified their action in honoring the endorsement. If the Gulf Fruit Company had paid from the proceeds of the plaintiff's check, or from other funds, the amount then due under its contract for the purchase of the Belvernon, the delivery of the vessel for service under the charter to the plaintiff could have been accomplished. It does not appear that the Gulf Fruit Company had defaulted in its purchase of the ship when its charter contract with the plaintiff was executed and when the check under consideration was drawn, endorsed and paid. The payments of the purchase price were to begin on delivery of the vessel, as stipulated in the contract of sale. The vendor in that agreement could not rightfully have endorsed and collected the plaintiff's check, since he had no contractual relation with the plaintiff, and could not have chartered the Belvernon to him while the Gulf Fruit Company's right of purchase existed. The proximate cause of the plaintiff's loss was apparently the subsequent default of the Gulf Fruit Company under its contract of purchase, and not the reliance of the banks of primary and ultimate payment upon the endorsement of the check by the company's agent.

Both of the parties, in their briefs, quoted section 42 of article 13 of the Code (now section 23 of the Negotiable Instruments Act), as follows:

"Where a signature is forged, or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

This section is cited by the plaintiff as declaring the principle that an unauthorized signature on a negotiable instrument is inoperative, while the defendants rely upon it as indicating that the drawer of a check may be precluded from disputing an unauthorized endorsement, and they argue that, even if the Gulf Fruit Company was not in law the payee of the check, yet the plaintiff is not entitled to urge that objection, in view of the fact that the payment of the check to the company was in accordance with his real intention. As the testimony tends to prove that the check was actually paid on the authorized endorsement of the party intended to be designated as payee, we are unable to find in the section quoted any decisive support for the plaintiff's claim.

The cases cited in the argument were concerned with endorsements of forged or fictitious names, the issuance or payment of checks to impostors, or with other conditions which are not sufficiently analogous to induce us to review those cases in this opinion. Upon the evidence as to the special facts of this case our conclusion is that the rulings of the lower court on the prayers were correct.

It is unnecessary to discuss the evidence exceptions, all of which relate to the admissibility of testimony as to an alleged custom of ship brokers to endorse checks for the hire of vessels under charter agreements which they have negotiated, since there was uncontradicted evidence of express authority to make the endorsement here in controversy.

*Judgment affirmed, with costs.*